# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

***People v. Snyder*, 2011 IL 111382**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. DEANDRA SNYDER, Appellee and Cross-Appellant. |
| Docket No. | 111382 |
| Filed | December 1, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a negotiated plea of guilty to criminal damage to property did not encompass sentencing and a restitution order was entered even absent the required advice that this was a possibility, the defendant was not entitled to vacation of that order where plea withdrawal had never been sought and was not wanted. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Stuart P. Borden, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part; circuit court judgment affirmed as modified. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Kevin W. Lyons, State's Attorney, of Peoria (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erica Seyburn, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Dawn Duffy, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Samuel L. Snyder, of East Peoria, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

# OPINION

¶ 1    Pursuant to a partially negotiated plea, defendant, Deandra Snyder, pled guilty to intimidation (720 ILCS 5/12-6(a)(1) (West 2008)) and criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2008)) and was sentenced to concurrent extended terms of imprisonment of 10 and 6 years, respectively, followed by one year of mandatory supervised release (MSR). Her sentences were to be served concurrently with each other but consecutively to any punishment she received for violating MSR in an unrelated case. She was also ordered to pay restitution.

¶ 2    On appeal, defendant argued that (1) the circuit court of Peoria County erred in imposing extended-term sentences on both convictions; (2) her sentence was excessive; (3) the court should not have ordered her sentences to be served consecutively to any punishment she received for violating MSR in an unrelated case; and (4) the court failed to admonish her about the possibility that she would be ordered to pay restitution. The appellate court vacated the extended-term portion of her criminal damage to property sentence, reducing the sentence for that offense to three years; found that, other than the extended-term sentencing issue, the trial court did not abuse its discretion in sentencing her; held that the trial court did not err in ordering her sentences to be served consecutively to any punishment she received for violating MSR in an unrelated case; and vacated the restitution order because the trial court failed to admonish her about the possibility that she would be ordered to pay restitution. 403 Ill. App. 3d 637.

¶ 3    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Defendant also seeks cross-relief, arguing that the trial court abused its discretion in imposing the maximum 10-year extended-term sentence for intimidation. For the following reasons, we reverse that portion of the appellate court's judgment vacating the restitution order and affirm the appellate court's judgment in all other respects.

-2-

¶ 4                                    I. BACKGROUND

¶ 5        On August 20, 2008, defendant, who had been dating Corey Simmons and was seven months pregnant with his child, drove to his apartment complex. When she arrived, she saw a parked car belonging to Jessica King, who had also been dating Simmons. She got a knife from her vehicle and slashed the convertible top and all four tires of King's car, causing $2,891 in damage. When King and Simmons confronted her, she began yelling and swinging the knife at them. Eventually, she got in her vehicle and left.

¶ 6        Defendant was charged with armed violence (720 ILCS 5/33A-2(a) (West 2008)), two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1 (West 2008)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)), intimidation (720 ILCS 5/12-6(a)(1) (West 2008)), and criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2008)). She agreed to plead guilty to intimidation and criminal damage to property in exchange for dismissal of the remaining charges. There was no agreement as to sentencing.

¶ 7        Before accepting defendant's guilty plea, the trial court admonished her that she faced a minimum of probation and a maximum of extended prison terms of 10 years for intimidation and 6 years for criminal damage to property, followed by one year of MSR. The court failed to admonish her as to the possibility that she would be ordered to pay restitution or fines.

¶ 8        Defendant's presentence investigation report indicates that, in June 2007, she pled guilty to arson and obstruction of justice, stemming from an incident in which she set fire to King's vehicle. She was sentenced to three years in prison for arson and directed to have no contact with King or Simmons. For obstruction, she was sentenced to 30 months of probation and ordered to take anger management classes. In January 2008, she was released from prison and began serving MSR on the arson conviction. At the time of the present offenses, she was in violation of the court's order prohibiting her from having contact with King or Simmons, was on probation for arson, was on MSR for obstruction of justice, and had not yet begun her anger management classes. She also had 2005 misdemeanor convictions for theft and criminal damage to property and was on probation for those offenses when she committed the 2007 arson.

¶ 9        At the sentencing hearing, the trial court stated that, in imposing sentence, it had considered aggravating and mitigating factors. The aggravating factors included defendant's prior criminal history and the fact that she was on probation and MSR when she committed the present offenses. The court also emphasized the need to deter others. In mitigation, the court noted that defendant had a newborn child and that there was some culpability by King and Simmons, who were involved in a "love triangle" with defendant. The court found that defendant was a very dangerous person with serious mental and anger management issues that needed to be addressed.

¶ 10       After considering the presentence investigation report, counsel's arguments, evidence in aggravation and mitigation, and defendant's statement in allocution, the court sentenced her to concurrent extended terms of imprisonment of 10 years for intimidation and 6 years for criminal damage to property, followed by one year of MSR. The sentences were to be served consecutively to any punishment she received for violating MSR in the unrelated arson case.

She was also ordered to pay $2,891 in restitution. She filed a motion to reconsider sentence but did not seek leave to withdraw her guilty plea. Her motion to reconsider sentence was denied. She filed a timely notice of appeal.

¶ 11    On appeal, defendant first argued, and the State conceded, that the trial court erred in imposing extended-term sentences on both of her convictions. 403 Ill. App. 3d at 639. The appellate court agreed and vacated the extended-term portion of her criminal damage to property sentence, reducing the sentence on that offense from six to three years. *Id.* at 640.

¶ 12    Defendant next argued that her sentence was excessive. The appellate court disagreed, finding that, other than the extended-term sentencing issue, which was corrected, the trial court did not abuse its discretion in sentencing defendant. *Id.* at 641. The appellate court noted that, in determining her sentence, the trial court had properly considered the presentence investigation report, defendant's statement in allocution, counsel's arguments, and the aggravating and mitigating factors. *Id.* at 640. The appellate court found that prison sentences of 10 years for intimidation and 3 years for criminal damage to property were not excessive given the significant aggravating factors in the case. *Id.* at 641.

¶ 13    Defendant next argued that the trial court erred in ordering her sentences to be served consecutively to any punishment she received for violating MSR in the unrelated arson case. The appellate court disagreed.

¶ 14    Finally, defendant argued that the trial court erred in failing to admonish her as to the possibility that she would be ordered to pay restitution. The appellate majority agreed, finding that the trial court's failure to admonish her as to the possibility that she would be ordered to pay restitution violated Illinois Supreme Court Rule 402(a)(2) (eff. July 1, 1997). *Id.* at 641. Following the Fourth District's opinion in *People v. Jenkins*, 141 Ill. App. 3d 602 (1986), the appellate majority held that the appropriate remedy for such an error was to vacate the restitution order. 403 Ill. App. 3d at 642. The majority reasoned that this court had adopted *Jenkins*' approach in *People v. Whitfield*, 217 Ill. 2d 177 (2005).

¶ 15    Justice Schmidt dissented as to the vacatur of the restitution order, noting that the Fourth District had impliedly repudiated *Jenkins*' holding that a court's admonishments constituted an implied promise; that *Whitfield* neither referred to nor relied on *Jenkins*; that *Whitfield* was based on a negotiated plea for a specific sentence, not an open plea; and that, here, defendant was not denied the benefit of any bargain with the State because there was no agreement as to sentencing. 403 Ill. App. 3d at 642-44 (Schmidt, J., concurring in part and dissenting in part). Justice Schmidt would have followed the Second District's approach in *People v. Seyferlich*, 398 Ill. App. 3d 989 (2010), reasoning that it was not the court's role to bargain with defendant and that if she regretted her plea as a result of the restitution order, the proper remedy was to allow her to withdraw her plea. 403 Ill. App. 3d at 645 (Schmidt, J., concurring in part and dissenting in part). Justice Schmidt opined that there was no indication that defendant was prejudiced or denied real justice as a result of the faulty admonition and that vacating the restitution order defeated the legislative purpose of trying to make victims whole.

¶ 16    This court allowed the State's petition for leave to appeal.

¶ 17                                    II. ANALYSIS

¶ 18                                  A. The State's Appeal

¶ 19    Rule 402 requires that the trial court give a defendant certain admonishments before accepting a guilty plea, including "the minimum and maximum sentence prescribed by law." Ill. S. Ct. R. 402 (eff. July 1, 1997).

¶ 20    In the present case, it is undisputed that the trial court failed to substantially comply with Rule 402(a)(2) in that it failed to admonish defendant as to the possibility that she would be ordered to pay restitution. The issue on appeal is whether the proper remedy for failing to admonish defendant, who entered a partially negotiated guilty plea, as to the possibility that she would be ordered to pay restitution is to vacate the restitution order or give her the opportunity to withdraw her plea. Here, defendant did not move to withdraw her guilty plea, and, at oral argument before this court, defense counsel made it clear that defendant does not want to withdraw her plea.

¶ 21    Because this issue concerns the interpretation of a supreme court rule, a question of law, our review is *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002).

¶ 22    In vacating the restitution order in the present case, the appellate majority relied heavily on *Jenkins*, 141 Ill. App. 3d 602. In *Jenkins*, the defendant entered an open guilty plea. *Id.* at 604. The trial court admonished him pursuant to Rule 402 before he entered his plea but did not mention restitution. The trial court ordered him to pay restitution as part of his sentences. On appeal, he argued that his guilty plea must be vacated because he was not admonished that his sentences might include restitution. *Id.* at 608. The Fourth District concluded that "the restitution order exceeded the 'maximum sentence' of which the defendant had been admonished upon entry of his guilty plea." *Id.* at 609. Although the defendant sought to vacate his plea, the *Jenkins* court concluded that the appropriate remedy was to vacate the restitution order, noting that as long as the restitution order was vacated, the sentences imposed were within the limits stated to the defendant before he entered his plea.

¶ 23    In his dissent from the appellate majority's vacatur of the restitution order in the present case, Justice Schmidt relied on *Seyferlich*, 398 Ill. App. 3d 989. In *Seyferlich*, the defendant, who entered an open plea, was admonished that her sentence could include a fine of up to $25,000 but not that she could be ordered to pay restitution. *Id.* at 990. She was ordered to pay $46,311 in restitution. On appeal, she argued that the trial court erred in failing to admonish her of the possibility of restitution. Citing *Jenkins*, she argued that the amount of restitution must be reduced to $25,000–the maximum financial penalty she was told she faced as a result of her guilty plea.

¶ 24    In rejecting her argument, the Second District in *Seyferlich* explained that the Fourth District's remedy in *Jenkins*–vacatur of the restitution order–was inappropriate. *Id.* at 991. The *Seyferlich* court noted that the cases upon which the *Jenkins* court relied characterized the trial court's admonishments as "implied promises" and viewed the admonishments as part of a bargaining process between the court and the defendant. The *Seyferlich* court rejected this view, noting that the admonishments, which are required by Rule 402, are designed to ensure that the defendant's guilty plea is intelligently and understandingly made,

as required by *Boykin v. Alabama*, 395 U.S. 238 (1969). The *Seyferlich* court noted that it is not the trial court's role to bargain with a defendant to obtain his or her guilty plea.

¶ 25 The *Seyferlich* court also recognized that the Fourth District's opinion in *People v. Harris*, 359 Ill. App. 3d 931 (2005), called into doubt the continued viability of its prior opinion in *Jenkins*. *Seyferlich*, 398 Ill. App. 3d at 991-92. In *Harris*, the court held that if the trial court's failure to properly admonish a defendant results in the denial of "real justice" or in prejudice to the defendant, the reviewing court should vacate the guilty plea. *Harris*, 359 Ill. App. 3d at 936. The *Harris* court noted that the defendant did not seek to vacate his guilty plea but, instead, sought the wrong remedy–to amend the sentencing order. *Id.* at 937.

¶ 26 The *Seyferlich* court concluded that "[i]f defendant would not have pleaded guilty but for the incomplete admonition, her remedy was to seek leave to withdraw her plea." *Seyferlich*, 398 Ill. App. 3d at 992. The court found that *Whitfield*, 217 Ill. 2d 177, did not dictate a different result. *Seyferlich*, 398 Ill. App. 3d at 992. We agree.

¶ 27 In *Whitfield*, the defendant entered a negotiated plea to first degree murder in exchange for a 25-year prison term. *Whitfield*, 217 Ill. 2d at 179. The court failed to admonish him that he would have to serve three years of MSR in addition to the negotiated prison term. *Id.* at 180. He argued that the MSR was not part of the negotiated sentence and that he was entitled to enforce his bargain with the State. *Id.* at 186-87. Recognizing that the MSR could not legally be stricken, he argued that, to best approximate his bargain with the State, his prison term should be reduced by three years. *Id.* at 187.

¶ 28 As we noted in *Whitfield*, the "benefit of the bargain" theory espoused by defendant was rooted in *Santobello v. New York*, 404 U.S. 257 (1971). *Whitfield*, 217 Ill. 2d at 184-85. In *Santobello*, the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262. In *Whitfield*, we restated that holding as follows: "if a defendant shows that his plea of guilty was entered in reliance on a plea agreement, he may have a due process right to enforce the terms of the agreement." *Whitfield*, 217 Ill. 2d at 189. In *Whitfield*, we agreed with the defendant's argument that "his constitutional right to due process and fundamental fairness was violated because he pled guilty in exchange for a specific sentence, but received a different, more onerous sentence." *Id.* at 188-89. In granting his request to reduce his prison term, we concluded that "adding the statutorily required three-year MSR term to defendant's negotiated 25-year sentence amounts to a unilateral modification and breach of the plea agreement by the State, inconsistent with constitutional concerns of fundamental fairness." *Id.* at 190.

¶ 29 In vacating the restitution order in the present case, the appellate majority, citing *Whitfield*, stated that "[t]he *Jenkins* approach has been adopted by our supreme court." 403 Ill. App. 3d at 642. Despite the appellate majority's statement to the contrary, we did not rely on or adopt *Jenkins*' reasoning in *Whitfield*. Instead, our holding in *Whitfield* was premised on the "benefit of the bargain" analysis, which was appropriate because of Whitfield's fully negotiated plea.

¶ 30 The significant difference between *Whitfield* and the present case is that Whitfield fully

negotiated for a specific prison term, whereas, here, defendant pled guilty with no promise as to sentencing. She pled guilty in exchange for the State's agreement to drop the remaining charges against her, which the State has done. Therefore, she has received the full "benefit" of her bargain. The remedy in *Whitfield* was fashioned to give Whitfield the "benefit of the bargain" he made with the State. In *Whitfield*, we concluded that we should give weight to Whitfield's preference, rather than simply giving him an opportunity to withdraw his plea. *Whitfield*, 217 Ill. 2d at 202-03, 205. However, nothing in *Whitfield* indicates that this specific enforcement remedy is available where, as here, a defendant enters a partially negotiated plea. Contrary to the appellate court's holding, *Whitfield*'s remedy–based on a "benefit of the bargain" analysis–is inapplicable to defendant's partially negotiated plea because she received the benefit of the bargain she made with the State.

¶ 31    We agree with and adopt the Second District's reasoning and conclusion in *Seyferlich* and hold that the appropriate remedy for the trial court's failure to admonish defendant, who entered a partially negotiated guilty plea, as to the possibility that she would be ordered to pay restitution is to allow her the opportunity to withdraw her plea. In so holding, we expressly overrule the Fourth District's holding in *Jenkins*–that the appropriate remedy for failing to admonish a defendant who entered a partially negotiated plea as to the possibility of restitution is to vacate the restitution order instead of allowing him the opportunity to withdraw his plea.

¶ 32    Therefore, as in *Seyferlich*, if defendant in this case would not have pleaded guilty but for the incomplete admonishment, she should have sought leave to withdraw her guilty plea. See *Seyferlich*, 398 Ill. App. 3d at 992. Allowing a defendant a fresh opportunity to decide whether to plead guilty, with full knowledge of the possible consequences, adequately protects her rights and avoids awarding a windfall due to the trial court's error. It also provides both the parties and the trial court an incentive to ensure adequate admonishments, while taking into consideration victims' rights to obtain restitution.

¶ 33    However, in the present case, we need not determine whether the incomplete admonishment requires vacatur of defendant's guilty plea because, at oral argument, defense counsel made it clear that defendant does not want to withdraw her plea. Instead, she seeks a remedy to which she is not entitled–vacatur of the restitution order. Accordingly, we reverse that portion of the appellate court's judgment vacating the restitution order.


¶ 34                    B. Defendant's Request for Cross-Relief

¶ 35    In her request for cross-relief, defendant argues that the trial court abused its discretion in imposing the maximum 10-year extended-term sentence for intimidation. We disagree.

¶ 36    A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). Therefore, a reviewing court may not modify a defendant's sentence absent an abuse of discretion. *Id.* at 212. An abuse of discretion will be found where "the sentence is 'greatly at variance with the spirit and purpose of the law[ ] or manifestly disproportionate

to the nature of the offense.' " *Id*. (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

¶ 37    After reviewing the record, we conclude that the trial court did not abuse its discretion in sentencing defendant to the maximum 10-year extended-term sentence for intimidation. The record demonstrates that the court properly considered the presentence investigation report, defendant's statement in allocution, counsel's arguments, and the aggravating and mitigating factors. The aggravating factors included defendant's prior criminal history and the fact that she was on probation and MSR when she committed the present offenses. The court also emphasized the need to deter others. In mitigation, the court noted that defendant had a newborn child and that there was some culpability by King and Simmons. The court further found that defendant was a very dangerous person with serious mental and anger management issues that needed to be addressed. Given the significant aggravating factors in this case, we cannot say that the sentence of 10 years' imprisonment for intimidation "is 'greatly at variance with the spirit and purpose of the law[ ] or manifestly disproportionate to the nature of the offense.' " See *Alexander*, 239 Ill. 2d at 212.

¶ 38                                  CONCLUSION

¶ 39    For the foregoing reasons, we reverse that portion of the appellate court's judgment vacating the restitution order and affirm the appellate court's judgment in all other respects.

¶ 40    Appellate court judgment affirmed in part and reversed in part;

¶ 41    circuit court judgment affirmed as modified.