NOTICE

Decision filed 07/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220560-U

NO. 5-22-0560

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CC-16 |
| | ) | |
| DEMETRIUS WADE, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in striking term of mandatory supervised release rather than allowing defendant to withdraw his guilty plea; nor did the circuit court abuse its discretion in denying defendant's motion to withdraw his guilty plea where defendant failed to establish that his guilty plea was entered through a misapprehension of fact or law.

¶ 2    The defendant, Demetrius Wade, was charged with multiple counts of criminal sexual assault in case No. 20-CF-499. The State filed a petition for indirect criminal contempt in the instant case, alleging the defendant violated the circuit court's order not to leave the country and to turn over his passport as a condition of his bond in case No. 20-CF-499. Approximately three weeks after he was arrested on the new charge of indirect contempt, the defendant pled guilty and was sentenced to five years imprisonment in the Illinois Department of Corrections (IDOC), to be followed by one year of mandatory supervised release (MSR). The defendant filed a motion to

1

reconsider sentence, which the circuit court granted, and reduced the defendant's sentence to three years in IDOC, with one year of MSR. On appeal, the Fourth District summarily remanded the cause for compliance with Illinois Supreme Court Rule 604(d). On remand, the defendant filed a motion to withdraw his guilty plea, which the circuit court denied. However, in its written order, the circuit court struck the term of MSR from the defendant's sentence. The defendant filed a timely appeal. For the following reasons, we affirm.

¶ 3                                     I. Background

¶ 4      The defendant filed a motion to modify the terms of his bond in case No. 20-CF-499 to allow him to leave the country to get married. On June 28, 2021, the circuit court denied the defendant's motion and ordered him not to leave the country and to surrender his passport within seven days. On July 7, 2021, the defendant had not surrendered his passport; instead, he told the circuit court he was having trouble finding it. The circuit court gave the defendant additional time to surrender his passport. On July 13, 2021, the defendant suggested to the circuit court that his passport had been either lost or stolen. He presented the circuit court with a form from the United States Department of State indicating that he had filed for a lost/stolen passport. The circuit court ordered the defendant to appear on July 22, 2021, for arraignment on eight previously filed charges in case No. 20-CF-499.

¶ 5      On July 22, 2021, the defendant failed to appear as ordered. The FBI later reported that the defendant had boarded a plane with an international destination. On July 23, 2021, the State filed a petition for adjudication of indirect criminal contempt. On August 27, 2021, the defendant was arrested in Illinois and arraigned on the contempt charge.

¶ 6      On September 16, 2021, the defendant pled guilty to indirect criminal contempt. Immediately prior to the plea hearing in the contempt case, the defendant was arraigned on seven

new charges the State had filed against him in case No. 20-CF-499. The circuit court admonished the defendant on the charges against him, the minimum and maximum prison sentences that he could receive for each offense, and the fact that such sentences would be followed by a term of MSR, ranging from 12 months for charges with the lowest classification, to three years to life for the charges with higher classifications.

¶ 7    The circuit court then admonished the defendant on the indirect criminal contempt charge with the understanding that he was planning to plead guilty. The circuit court asked if the State was seeking "major sanctions, not minor sanctions, so in excess of six months?" The State confirmed this was correct, and the circuit court admonished the defendant on the rights he would be giving up, including the rights to trial, counsel, and proof beyond a reasonable doubt. The circuit court instructed the defendant as follows:

"THE COURT: The possible sanctions for a major finding of contempt are only reasonable limitations. So whatever sanctions this Court or the attorneys agree are reasonable are what could be imposed. An Appellate Court could come to a different conclusion if you believe the sanctions were unreasonable."

¶ 8    The defendant stated that he understood his rights, but he had a question about the major sanctions. It appears that an off-the-record discussion was held between the defendant and defense counsel. After defense counsel spoke to the defendant, the defendant reported to the circuit court that his question had been answered by his attorney. Defense counsel and the State advised the circuit court that the defendant had rejected several plea offers made by the State aimed at resolving the charges in both case No. 20-CF-499 and the contempt charge, which the State said were now withdrawn. As to the final offer made, defense counsel stated:

3

"And then Option 4 would have been, again, file a Class 3 aggravated battery for an agreed two years DOC at 50 percent. And then on the criminal contempt, two years DOC to run actually concurrent with the aggravated battery public place."

The defendant confirmed he had chosen to reject the plea offers, maintaining that he was innocent of the charges in case No. 20-CF-499.

¶ 9    The circuit court next asked the defendant if it was correct that he was pleading guilty to the indirect criminal contempt charge for an open sentencing hearing, and the defendant confirmed that he was. The defendant said he understood the rights that he was giving up. The circuit court explained how sentencing would proceed and informed the defendant that "ultimately, it's my decision as to what the penalty is going to be, and the only limitation is it must be reasonable." The defendant confirmed this was his understanding. After another discussion with his attorney about the evidence that could be presented at sentencing, the defendant had no further questions and entered his guilty plea. The defendant confirmed that no one had used force, threats, or additional promises to get him to plead guilty.

¶ 10    The circuit court took judicial notice of the orders it had issued in case No. 20-CF-499 and the events that had transpired in court. The State provided a factual basis, indicating that if the case were to proceed to trial, it would present testimony from a Homeland Security official who would provide the flight manifest establishing that the defendant had checked in and boarded a plane to an international destination. The State would also present evidence of the defendant's passport with stamps from the Dominican Republic, which was taken from him when he landed in Orlando, Florida, along with testimony from Florida jail officers about the defendant's transfer to Illinois, and how the passport was among the personal property seized from him. Defense counsel agreed he was satisfied the State had evidence substantially as indicated. The circuit court found the

4

defendant's guilty plea was made knowingly, intelligently, and voluntarily, and accepted the defendant's plea to the charge of indirect criminal contempt.

¶ 11    On October 21, 2021, a sentencing hearing was held. After the presentation of evidence in aggravation and mitigation, the State argued for a sentence to IDOC without recommending a specific amount of time; instead, the State asked the circuit court to fashion a reasonable sentence. Defense counsel argued for a sentence of time served, citing *People v. Geiger*, 2012 IL 113181, for the factors to be considered in forming a sentence. In his statement in allocution, the defendant apologized for his behavior, stating that he left believing he would return, turn himself in, and bond out within a day. In asking for leniency, the defendant stated it was not his intention to obstruct his case, but he wanted to give his wife the destination wedding they had planned.

¶ 12    After hearing from the parties, the circuit court discussed the factors set out in *Geiger* by the Illinois Supreme Court, the possible comparable offense of violation of bail bond, and the factors in aggravation and mitigation. The circuit court, noting the defendant had misled the court on several occasions, reasoned that it was difficult to imagine anything that would more effectively derogate the authority of the court than to directly defy a clear and unequivocal order. It noted that it was obvious that the defendant had lied to the court on two occasions when he stated that he did not possess a passport which he later used to travel out of the country. The circuit court explained that although the defendant might have believed he could travel out of the country, turn himself in upon reentry into the country, and bond out in one day, that did not happen because the defendant did not turn himself in; rather, the defendant was later arrested on a warrant. The circuit court found that the defendant had made a calculated decision wherein he did a risk-reward analysis and decided it was worth spending more time in jail to directly thumb his nose at the court's order. The circuit court noted the defendant's prior history of criminal activity and further noted that the

5

defendant was on felony probation at the time of committing the offense of contempt. The court then sentenced the defendant to five years in IDOC followed by a 12-month term of MSR.

¶ 13    On November 4, 2021, the defendant filed a motion to reconsider the sentence, asking for a reduction of the sentence on the basis that the circuit court erred in comparing the contempt to a violation of bail bond. The State filed a response, arguing the circuit court had fashioned an appropriate sentence. The circuit court reduced the defendant's sentence to three years in IDOC but did not alter the 12-month term of MSR.

¶ 14    On December 29, 2021, the defendant appealed. On April 28, 2022, the Fourth District issued its mandate. The appellate court granted the parties' agreed motion for summary remand for strict compliance with Illinois Supreme Court Rule 604(d), including the filing of a Rule 604(d) certificate; the opportunity to file a new Rule 604(d) motion, if counsel concluded a new motion was necessary; a new motion hearing; and to have a ruling on all pending Rule 604(d) motions. On remand, the defendant was appointed a new attorney, but chose to waive his right to counsel and proceeded *pro se* in both cases.

¶ 15    On June 24, 2022, the defendant filed a *pro se* motion to withdraw his guilty plea in the contempt case, arguing that the circuit court had not adequately advised him of the minimum and maximum sentences that he could receive and had failed to admonish him that a period of MSR could be imposed. The State countered that the defendant's motion to withdraw his guilty plea pursuant to Illinois Supreme Court Rule 604(d) was untimely where the defendant pled guilty on September 16, 2021, and was sentenced on October 21, 2021. The circuit court allowed the defendant to file the *pro se* motion to withdraw his guilty plea pursuant to the Fourth District's mandate allowing the defendant the opportunity to file a new 604(d) motion if it was determined one was necessary.

¶ 16    On August 22, 2022, a hearing was held on the defendant's motion. The circuit court once again admonished the defendant on his right to counsel and the offenses with which he was charged, and the defendant indicated that he understood these admonishments. As to the defendant's sentence, the circuit court explained there was no statutory sentencing range for indirect criminal contempt; the sentence merely had to be reasonable. However, as the circuit court further explained, it was unclear whether MSR could be imposed. The circuit court allowed the defendant to amend his motion to withdraw his guilty plea by interlineation. In his original motion, the defendant claimed that he was improperly informed as to the major sanctions available because he was not given a minimum and maximum range and that he was not admonished that a period of MSR could be imposed. In his amended motion, the defendant claimed that imposing MSR amounted to a unilateral modification by the circuit court and a breach of the plea agreement. He asserted that such errors violated his rights to due process and fundamental fairness, citing *People v. Snyder*, 2011 IL 111382; and, thus, his guilty plea was made without his full knowledge of the consequences.

¶ 17    Throughout the defendant's argument, the circuit court repeatedly asked the defendant if he was seeking reconsideration of his sentence. The defendant maintained he was seeking only withdrawal of his plea, but he also stated that he wished to preserve his argument that his sentence was excessive. Under questioning from the circuit court, the defendant confirmed that he wanted to go to trial on the contempt charge and make the State produce the evidence against him, but he also stated that he believed a new sentencing hearing would be "more fair."

¶ 18    The State contended that the defendant's discussion of the unfair nature of the sentence was not a basis for withdrawal of his plea; that contempt had no statutory sentencing range; that the defendant had been informed by the circuit court that the sentence only needed to be

reasonable; and that the circuit court had sentenced the defendant to the smallest term of MSR possible. In rebuttal, the defendant argued that MSR could not be imposed for contempt and that imposing it without telling him it could be imposed voided the plea agreement. The defendant acknowledged that he understood there was no sentencing range for the offense, only that the sentence was required to be reasonable. However, the defendant insisted he believed "no reasonable person would give me years in the Department of Corrections for contempt."

¶ 19    The circuit court found the defendant had not been admonished on the possibility of MSR, stating that it was unclear whether MSR was authorized for contempt. The circuit court further found that in all other respects the sentence was consistent with the admonishments and, thus, the defendant's motion to withdraw his guilty plea was denied. Two days later, in its written order, the circuit court struck the 12-month term of MSR from the defendant's sentence. This appeal follows.

¶ 20                                    II. Analysis

¶ 21    On appeal, the defendant contends the circuit court erred in denying his motion to withdraw his guilty plea where the circuit court failed to admonish him on the possibility that a term of MSR could be imposed and where he was not given a reasonable understanding of the possible sentence that could be imposed.

¶ 22    At the outset we note the State argues that because the defendant has completed his sentence, the appeal is moot, citing *People v. Funches*, 2019 IL App (3d) 160644, ¶ 8 (generally, a challenge against defendant's sentence is moot where defendant has completed the sentence). However, the defendant argues that *Funches* is inapposite where he is not challenging the sentence imposed, but rather he is challenging the validity of his plea. *People v. Campbell*, 224 Ill. 2d 80, 83 (2006) (while completion of a sentence renders moot a challenge to the sentence, it does not so

8

render a challenge to the conviction). Because the defendant consistently has maintained that he is challenging the validity of his guilty plea, we do not find that the issue moot.

¶ 23     "A guilty plea is an admission of guilt and a conviction in and of itself." *People v. Reed*, 2020 IL 124940, ¶ 27. By pleading guilty, a defendant waives all nonjurisdictional defenses or defects, including constitutional ones. (Internal quotation marks omitted.) *Id.* (citing *People v. Burton*, 184 Ill. 2d 1, 27 (1998)). In order to satisfy due process, it must affirmatively be shown that a guilty plea was made voluntarily and intelligently. *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). Illinois Supreme Court Rule 402 was adopted to ensure that due process requirements are satisfied, and the rule requires the trial court to give certain admonishments before accepting a guilty plea, which includes informing the defendant of "the minimum and maximum sentence prescribed by law." Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012); *Fuller*, 205 Ill. 2d at 322. Rule 402 admonishments are designed to ensure that the defendant understands his plea, the rights he waives by pleading guilty, and the consequences of a guilty plea. *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009).

¶ 24     Once a guilty plea is entered, there is no absolute right to withdraw a guilty plea; instead, a defendant must show a manifest injustice occurred under the facts involved. *People v. Hughes*, 2012 IL 112817, ¶ 32. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* On appeal, a trial court's decision to grant or deny a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *People v. Burge*, 2021 IL 125642, ¶ 37. An abuse of discretion will be found only if the trial court's ruling is arbitrary, fanciful, or unreasonable. *Id.*

¶ 25    Although the term of MSR was stricken from the defendant's sentence, he nevertheless contends that the circuit court's decision to strike the MSR rather than allowing him to withdraw his guilty plea was in direct contradiction to the Illinois Supreme Court's holding in *Snyder*, 2011 IL 111382, ¶ 31. The defendant argues *Snyder* established that the remedy for a circuit court's failure to admonish a defendant on a particular penalty, where there is no agreement on the sentence, is the withdrawal of the guilty plea. We reject the defendant's overly broad interpretation of the holding in *Snyder* and instead note that in *Snyder* our state's highest court held that "the appropriate remedy for the trial court's failure to admonish defendant, who entered a partially negotiated guilty plea, as to the possibility that she would be ordered to pay restitution is to allow her *the opportunity to withdraw her plea*." (Emphasis added.) *Id.*

¶ 26    In the instant case, the defendant, having rejected the State's four previous plea offers, entered a non-negotiated guilty plea to the charge of indirect criminal contempt. See *Reed*, 2020 IL 124940, ¶ 25 (a negotiated guilty plea is the result of an agreement between the State and the defendant, in which both parties benefit and make concessions). Assuming, *arguendo*, that *Snyder* was controlling where a defendant has entered an open guilty plea, the defendant's argument still would be without merit where on remand, pursuant to the Fourth District's mandate, the circuit court allowed him the opportunity to withdraw his guilty plea. Thus, we find the circuit court did not abuse its discretion in striking the MSR rather than allowing the defendant to withdraw his guilty plea.

¶ 27    Turning to the defendant's second claim of error, he maintains that because he was not given a reasonable understanding of the possible sentence that could be imposed, his guilty plea was not made knowingly, intelligently, and voluntarily, and a manifest injustice occurred when his motion to withdraw was denied.

¶ 28    "[A] court, in order to maintain control over its courtroom, has the inherent power to punish for contempt." *Geiger*, 2012 IL 113181, ¶ 24. However, the legislature has not determined a sentencing classification or sentencing range for contempt. *Id.* Providing guidance, our state supreme court stated in *Geiger*:

> " 'A court has the inherent power to punish, as contempt, conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute. [Citation.] A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court. [Citation.] Nonetheless, "its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions." [Citation.]' " *Id.* ¶ 26 (quoting *People v. Ernest*, 141 Ill. 2d 412, 421 (1990)).

¶ 29    The defendant concedes that the circuit court's admonishment that the sentence imposed for contempt must be reasonable was technically and legally accurate; however, he argues that merely reciting the legal standard of reasonableness did not convey the length of the sentence he might receive upon entering a guilty plea. Specifically, the defendant argues that without some kind of context for what could be considered "reasonable," the circuit court's admonishment could not provide him with the full understanding of the consequences of his plea which is required under the law. The defendant suggests that the circuit court could have admonished him that sentences as high as 10 years had been affirmed on appeal in other contempt cases. The State counters that the record contradicts the defendant's argument that he was unaware that he could receive a sentence for contempt that would be measured in years. Prior to pleading guilty, the defendant rejected four plea offers by the State, one of which provided that the defendant would serve two years in IDOC on the criminal contempt charge. The defendant dismisses the State's contention,

11

arguing that while the State's plea offer included a term of two years' imprisonment for contempt, the offer provided that the two-year sentence would have been served concurrently to a two-year sentence for aggravated battery in case 20-CF-499, which would have resulted in no additional time added to his sentence.

¶ 30 We find the defendant's arguments unpersuasive. As noted previously, the defendant acknowledges that the circuit court's admonishment was technically and legally accurate. We are not aware of any additional requirements under Rule 402 other than that an admonishment be technically and legally accurate. The defendant was informed that one of the plea offers from the State included a two-year sentence on the contempt charge; that criminal contempt had no minimum or maximum sentencing range; that the State was seeking a major sanction in excess of six months; that a sentence for contempt must be reasonable; and that it was ultimately the circuit court's decision to determine the penalty for criminal contempt, with the limitation that the sentence be reasonable.

¶ 31 Here, the defendant has not established that his guilty plea was entered through a misapprehension of the facts or of the law (see *Hughes*, 2012 IL 112817, ¶ 32); rather, the defendant's argument is that he entered his guilty plea through a misapprehension of the length of the sentence that he could receive. In the absence of a statutory sentencing range, we find that the defendant was properly admonished and that the circuit court did not err in denying the defendant's motion to withdraw his guilty plea. Furthermore, although the defendant argues that the circuit court "could have" admonished him that sentences as high as 10 years had been affirmed on appeal in other contempt cases, he cites no authority requiring the circuit court to do so.

¶ 32                                   III. Conclusion

¶ 33 For the foregoing reasons, we affirm the judgment of the circuit court.

12

¶ 34    Affirmed.